JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Amanda Pope

**DEFENDANTS**
Michael Joseph Chovanes and
Keith Ferketich

(b) County of Residence of First Listed Plaintiff    Marion Co., Florida
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Lehigh County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Michael A. Iaconelli, Esq./William J. Clements, Esq.
Flehr Harrison Harvey Branzburg , 1835 Market St.
Phila, PA 19103

Attorneys *(If Known)*    unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
        Plaintiff

☐ 3  Federal Question
        *(U.S. Government Not a Party)*

☐ 2  U.S. Government
        Defendant

☒ 4  Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
      Proceeding

☐ 2 Removed from
      State Court

☐ 3 Remanded from
      Appellate Court

☐ 4 Reinstated or
      Reopened

☐ 5 Transferred from
      Another District
      *(specify)*

☐ 6 Multidistrict
      Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §1332
Brief description of cause:
fraud, conversion, declaratory judgment and equitable claims

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
    UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY    None
*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
June 26, 2015

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: __2999 NW 165th Street, Citra, FL 32113__

Address of Defendant: __Chovanes (1065 Huffs Church Rd., Alburtis, PA 18011) Ferketich (78 Weaver Rd.__

Place of Accident, Incident or Transaction: __1065 Huffs Church Rd., Alburtis, PA 18011__   Zionsville, PA 18092)

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes☐   No☒

Does this case involve multidistrict litigation possibilities?          Yes☐   No☒

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
          Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
          Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
          Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
          Yes☐   No☒

---

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases
   (Please specify) __Fraud, conversion,__
      __declaratory judgment and__
      __equitable claims__

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, __William J. Clements__, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: __6/26/15__          __William J. Clements__          __PA 86348__
                    Attorney-at-Law                              Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.   (none)

DATE: __6/26/15__          __William J. Clements__          __PA 86348__
                    Attorney-at-Law                              Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Amanda Pope | : | CIVIL ACTION |
| | : | |
| v. | : | |
| Michael Joseph Chovanes and | : | |
| Keith Ferketich | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     (x )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( )

| | | |
|---|---|---|
| 6/26/15 | William J. Clements | Plaintiff, Amanda Pope |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-3494 | (215) 568-6603 | wclements@klehr.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMANDA POPE<br>2999 NW 165th Street<br>Citra, FL 32113 | : <br> : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | :      **CIVIL ACTION NO.** <br> : |
| MICHAEL JOSEPH CHOVANES<br>1065 Huffs Church Road<br>Alburtis, PA 18011 | : <br> : <br> : <br> : |
| -and- | : <br> : |
| KEITH FERKETICH<br>78 Weaver Road<br>Zionsville, PA 18092, | : <br> : <br> : |
| Defendants. | : <br> :      **JURY TRIAL DEMANDED** <br> : |

## COMPLAINT

Plaintiff, Amanda Pope ("Plaintiff" or "Pope") brings this complaint against defendants Michael Joseph Chovanes and Keith Ferketich (collectively, "Defendants") and, in support thereof, avers as follows:

### Introduction

1.     Defendant Michael Joseph Chovanes ("Chovanes"), with the material assistance of co-defendant Keith Ferketich ("Ferketich"), have fraudulently attempted to steal from Pope two valuable and unique vintage automobiles that she purchased and owns.

2.     The automobiles are currently being stored at defendant Chovanes' personal residence and, despite repeated demands by Pope, he has failed and refused to return Pope's

1

valuable and unique property to her, necessitating this lawsuit.

## The Parties

3.      Plaintiff, Amanda Pope is an adult individual and resident of the State of Florida, with an address of 2999 NW 165th Street, Citra, Florida 32113.

4.      Defendant, Michael Joseph Chovanes is an adult individual and resident of the Commonwealth of Pennsylvania, with an address of 1065 Huffs Church Road, Alburtis, Pennsylvania 18011.

5.      Defendant, Keith Ferketich is an adult individual and resident of the Commonwealth of Pennsylvania, with an address of 78 Weaver Road, Zionsville, Pennsylvania 18092.

## Jurisdiction And Venue

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the adverse parties are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Defendants, and venue is proper in this district pursuant to 28 U.S.C. § 1391, because: (a) one or more of the Defendants reside in this district; (b) one or more of the Defendants can be served with process in this district; (c) one or more of the Defendants committed intentional torts in this district; (d) Plaintiff suffered harm in this district; and (e) the unique personal property forming the subject matter of this action is located in this district.

## The Initial Relationship Between Pope And Chovanes

8.      Pope and Chovanes have known each other since 2009, first becoming acquainted through the thoroughbred horse industry.

9.      Pope is a horse breeder and owns race horses. Chovanes is a veterinarian who

2

travels throughout the country to perform services for his clients at horse sales/auctions, racetracks and other facilities where thoroughbred horses are located.

10. In approximately April 2009, Pope and Chovanes formed a romantic relationship.

11. Since Pope lived in Florida and Chovanes lived in Pennsylvania, they traveled between these states to see each other, and to other places to attend various events associated with the thoroughbred horse industry.

12. In addition to their common interest in horses, Pope and Chovanes shared an interest in automobiles.

13. In or about May 2010, the couple attended the "Indianapolis 500" automobile race in Speedway Indiana and, on June 26, 2010, the couple attended a "Mecum Auto Auction" in Marengo, Illinois (the "Auto Auction").

## The Auto Auction

14. Pope was considering purchasing one or more automobiles at the Auto Auction, for either her personal use or as an investment.

15. Although Pope and Chovanes both attended the Auto Auction on June 26, 2010, only Pope was authorized to sign a "bidder's ticket," "bidder's receipt" and, most importantly, purchase the automobiles being auctioned at the Auto Auction.

16. In particular, Pope was interested in purchasing an older model (*i.e.*, vintage) Corvette sports car because her brother -- who had passed away -- previously owned such a vehicle.

## Pope Purchases Two Corvettes At The Auto Auction

17. Pope successfully bid on, signed the bidder's ticket and bidder's receipt for, and ultimately purchased two (2) Corvettes at the Auto Auction.

3

18.     One of the automobiles was a 1995 Corvette ZR-1 (the "1995 ZR-1"), and the other was a 1969 Corvette Stingray (the "1969 Stingray").

19.     Pope purchased the 1995 ZR-1 at the suggestion of Chovanes. The 1969 Stingray -- which reminded her of the Corvette her deceased brother previously owned and had restored -- was picked out and purchased by Pope for mainly sentimental reasons.

20.     With respect to the 1995 ZR-1, Chovanes told Pope that the automobile was valuable and, therefore, would be an excellent investment for her to make.

21.     At the Auto Auction, Chovanes also represented to Pope that he was interested in "going-in" on the investment, and would pay one-half of the purchase price of the 1995 ZR-1 (with her paying the other half) if her bid on the automobile was ultimately successful.

22.     Based on Chovanes' representations, Pope proceeded to bid on, and was ultimately the successful bidder for, the 1995 ZR-1.

23.     After the bidding process closed, but before Pope was required to pay for the 1995 ZR-1, Chovanes informed her that he "did not have a check in his possession to cover his half," and that he "would reimburse her for his 50% portion later."

24.     Based on Chovanes' representation, Pope paid the entire purchase price for the 1995 ZR-1, totaling $30,740.00, with her personal check number 3735. See Exhibit "A."

25.     During the Auto Auction, Pope was also the successful bidder on the 1969 Stingray, and paid the entire purchase price for that automobile, totaling $53,500.00, with her separate personal check number 3736. See Exhibit "B."

26.     To date, Chovanes has not tendered to Pope any payment for any portion of the purchase price of the 1995 ZR-1, and likewise has not contributed anything toward the purchase price of the 1969 Stingray.

4

27.     Consequently, Pope has paid for and -- up to and through the present -- exclusively owns the 1995 ZR-1 and the 1969 Stingray.

**Chovanes Attempts To Alter The Auto Auction Paperwork For the 1995 ZR-1**

28.     In order to remove an automobile from the location of the Auto Auction, a successful bidder must possess a "Gate Pass" demonstrating that the purchase price has been paid in full.

29.     The requisite form of Gate Pass was issued by the Auto Auction exclusively to Pope as the "buyer" -- and now, "owner" -- of the 1995 ZR-1. See Exhibit "C."

30.     In addition, Pope was issued a receipt by the Auto Auction's cashier in connection with her purchase of the 1995 ZR-1. See Exhibit "D."

31.     While Pope was writing out the above-referenced checks to the Auto Auction (Exhibits "A" and "B"), Chovanes altered the receipt for the 1995 ZR-1 by crossing off Pope's name and address, and handwriting his own name and address in the box entitled "Buyer Information." See id.

**The Pope/Chovanes Relationship Breaks Down**

32.     After purchasing the 1995 ZR-1 and the 1969 Stingray at the Auto Auction, Pope decided to have both automobiles transported to Chovanes' personal residence in Pennsylvania.

33.     In or about February 2011, approximately eight months after attending the Auto Action together, Pope and Chovanes got engaged.

34.     The engagement was broken off in approximately April 2013.

35.     As a result, Pope requested that the 1969 Stingray be sent by Chovanes to her Florida residence.  Pope also requested that Chovanes return, or completely reimburse her for, the 1995 ZR-1 he was storing for her at his residence in Pennsylvania.  Pope offered to make

5

arrangements to transport the car to Florida at Pope's expense. Pope just needed to know the location of the car.

36.     Despite these requests (the sole legal owner of both vehicles), Chovanes assured her that he was safely storing and maintaining both automobiles, and that there was no present need to move them.

37.     In reliance on Chovanes' representations, Pope decided to leave her automobiles at Chovanes' residence for the time being.

### Pope Again Seeks To Recover Her Automobiles

38.     By the Fall of 2014, Pope and Chovanes were communicating with one another again, and sought to revive their former (pre-engagement) professional working relationship.

39.     In light of this, Pope once again raised the issue of Chovanes/allowing her to have her automobiles shipped to her residence in Florida.

40.     However, at this point, Chovanes told Pope that he had already sold the 1969 Stingray to a third party.

41.     Pope was shocked to hear this, since she was the only owner of the 1969 Stingray. See e.g., Exhibit "E."

42.     Therefore, Pope demanded that Chovanes immediately return the 1969 Stingray to her in Florida.

43.     In response, Chovanes stated that he: (a) no longer had physical possession of the car; (b) did not know where the car was located; (c) had sold the car for $30,000.00 "in cash" to a third party purchaser (which amount was significantly less than what Pope had previously paid for it); and (d) he would give Pope the $30,000.00 in cash that he received from his buyer if she first conveyed title of the car to him so long as she did not fill in only buyer's information.

6

44.    When Pope requested information about the name, address and contact information for Chovanes' supposed buyer, Chovanes initially refused to disclose the information to Pope; nor would he disclose the whereabouts of the 1969 Stingray.

45.    Since Pope never authorized Chovanes to sell her 1969 Stingray (let alone for the drastically reduced price that Chovanes claimed he sold it to defendant Ferketich for), Pope again demanded that Chovanes return the car to her, and return any purchase money to Ferketich.

46.    So pressed, Chovanes begrudgingly gave Pope what he represented to be the "Agreement and Contract For A Sale of An Automobile" purportedly between Pope (as the alleged seller) and defendant Ferketich (as the alleged buyer) for the 1969 Stingray.  See Exhibit "F."

47.    In this so-called "agreement," Chovanes falsely represented himself to be the "agent for seller," and also signed the alleged "agreement" in that capacity.  See id.

48.    Chovanes' representations in this regard were fraudulent:  (a) Pope had not appointed Chovanes as her "agent" for any purpose whatsoever, let alone to sell the 1969 Stingray to anyone, at any price; and (b) Pope never agreed to transfer title to the 1969 Stingray to anyone.

49.    This supposed "agreement" does, however, demonstrate that Chovanes always recognized Pope as the only true owner of the 1969 Stingray.  See id.

50.    Regardless, other than the document attached hereto as Exhibit "F," Chovanes has not provided Pope with any documentation demonstrating that the purported buyer, co-defendant Ferketich, actually paid Chovanes anything for the 1969 Stingray.

51.    Likewise, Chovanes has never explained to Pope why Ferketich -- a supposed licensed car dealer -- would pay any monies (let alone cash) to a supposed agent before being

7

provided with proof or a copy of the title to the automobile by the owner of record.

52.     Throughout the balance of 2014 and 2015, Pope has repeatedly attempted to have the 1969 Stingray returned to her, and has also advised Chovanes that, if he wanted to purchase the 1995 ZR-1 from her, he would have to pay her at least $30,000.00 for the vehicle.  Chovanes has not agreed to do so.

53.     Chovanes' conduct suggests that he believes the 1995 ZR-1 is his personal property to do with as he pleases (despite the fact that he is not the owner of record, and has he paid for the vehicle, in whole or in part).

54.     Moreover, Chovanes has repeatedly told Pope that the 1969 Stingray is no longer in his physical possession, and that he "does not know where the car is," so he cannot return it to her.  However, Chovanes' statements in this regard were also knowingly false.

55.     On June 23, 2015, a licensed private investigator (accompanied by a state constable) confirmed that the 1969 Stingray and 1995 ZR-1 are both being stored in a locked garage that is attached to Chovanes' personal residence at 1065 Huffs Church Road, Alburtis, Pennsylvania 18011.

56.     In addition: Chovanes has: (a) failed and refused to return either of the automobiles to Pope, their rightful owner; (b) refused to provide any explanation for this failure and refusal; and (c) whenever Pope has tried to discuss the issue with him, persists in stating that Pope must first sign the title of the 1969 Stingray over to him -- without identifying the name of the new purchaser in the document -- so that Chovanes can (supposedly) complete the sale of the 1969 Stingray to Ferketich.

57.     Pope believes that, aside from being completely unauthorized, the alleged transaction involving Chovanes and Ferketich is a complete and utter sham, designed by one or

8

both of the Defendants to fraudulently, and in bad faith, coerce Pope into signing the title to the 1969 Stingray over to Chovanes for only a fraction of the car's actual value, in furtherance of their attempt to wrongfully and illegally profit at her expense.

58.     Further, Chovanes has repeatedly attempted to deceive Pope as to the actual whereabouts of the automobiles, including the 1969 Stingray.    Specifically, Chovanes has repeatedly stated to Pope that he: (a) no longer has the car; and (b) does not know its whereabouts.  Contrary to Chovanes' knowingly false representations to Pope, on June 23, 2015, a representative of Pope, along with a state constable, confirmed that the 1969 Stingray and 1995 ZR-1 are still located at Chovanes' personal residence.

## Count I—Fraud
## Pope v. Chovanes

59.     Pope incorporates herein by this reference the averments in the foregoing paragraphs as if set forth at length herein.

60.     Chovanes represented to Pope that he would pay one-half the purchase price for the 1995 ZR-1; he never did so.

61.     Chovanes represented to Pope that he would store her automobiles on his property, and that Pope would have access to her automobiles on demand.

62.     Pope reasonably relied on these representations, both in purchasing the automobiles, and in allowing Chovanes to store her automobiles at his residence.

63.     Chovanes' representations were false when made.

64.     Chovanes' false representations were made by him with the intent of inducing Pope to purchase and store the 1969 Stingray and 1995 ZR-1 on his property so that Chovanes would have custody and control over them to do whatever he pleased, and contrary to Pope's ownership interest.

9

65.     To this end, Chovanes deliberately altered certain paperwork regarding the sale of the 1995 ZR-1, see Exhibit "D," so as to make it appear as if he -- instead of Pope -- was the actual "buyer" of that automobile.

66.     In an attempt to conceal his conduct, Chovanes repeatedly lied to Pope about the location of the automobiles, and falsely represented to her that he: (a) could not return the 1969 Stingray to her because it (supposedly) was no longer in his possession; and (b) did not have information on its whereabouts.

67.     At the time Chovanes made the foregoing materially false representations to Pope, he was aware that both automobiles were still being stored by him on his residential property.

68.     Chovanes also knowingly misrepresented himself to third parties as Pope's agent, acting with her authority, in connection with a purported sale of the 1969 Stingray when, in fact, Chovanes was at all times aware that he was not Pope's agent for any purpose, and had no authority from Pope to enter into any transaction involving the automobiles or otherwise.

69.     As a direct, foreseeable and proximate result of Chovanes' fraudulent and other wrongful conduct, Pope has suffered harm, and has been deprived of her unique and valuable property; namely, her two automobiles.

70.     Chovanes' fraudulent and illegal conduct, including taking advantage of his personal relationship with Pope, was willful, deliberate, egregious and outrageous, and beyond all bounds of acceptable business, interpersonal and societal conduct, sufficient to warrant the imposition of punitive damages.

WHEREFORE, plaintiff Pope respectfully demands judgment in her favor and against defendant Chovanes on Count I in excess of $75,000.00, and all other relief that the Court deems

PHIL1 4616589v.2

just and proper under the circumstances including, but not limited to, pre-judgment interest, costs and punitive damages as allowed by law.

**Count II—Conversion**
**Pope v. Chovanes and Ferketich**

71.  Pope incorporates herein by this reference the averments in the foregoing paragraphs as if set forth at length herein.

72.  The automobiles are the property of Pope.

73.  The only "authority" Chovanes possessed with respect to the automobiles was to: (a) store them in a safe location; and (b) provide Pope with unfettered access to them -- or to return them to Pope -- immediately upon her demand.

74.  Pope has made repeated demands upon Chovanes for the return of her property, but Chovanes has failed and refused to return her property.

75.  Chovanes has further claimed to have "sold" or otherwise conveyed Pope's property -- namely, the 1969 Stingray -- to defendant Ferketich.

76.  To the extent Ferketich has come into possession of the 1969 Stingray, any such possession likewise constitutes conversion of Pope's property.

77.  Moreover, it is believed, and therefore averred, that Ferketich is/was a licensed automobile dealer who knew -- or should have known -- that his and Chovanes' conduct was wrongful and illegal.

78.  Defendants' conduct referred to herein constitutes a tortious conversion of Pope's property.

79.  As a direct, foreseeable and proximate result of Defendants' wrongful conduct, Pope has suffered harm, and has been deprived of her unique and valuable property; namely, her two automobiles.

11

80.     Chovanes' fraudulent and illegal conduct, including taking advantage of his personal relationship with Pope, and Ferketich's additional wrongful and illegal conduct as alleged herein, was willful, deliberate, egregious and outrageous, and beyond all bounds of acceptable business, interpersonal and societal conduct, sufficient to warrant the imposition of punitive damages.

WHEREFORE, plaintiff Pope respectfully demands judgment in her favor and against defendants Chovanes and Ferketich on Count II in excess of $75,000.00, and all other relief that the Court deems just and proper under the circumstances including, but not limited to, pre-judgment interest, costs and punitive damages as allowed by law.

### Count III—Unjust Enrichment/Constructive Trust
### Pope v. Chovanes and Ferketich

81.     Pope incorporates herein by this reference the averments in the foregoing paragraphs as if set forth at length herein.

82.     To the extent the Defendants remain in possession of the automobiles, or any alleged proceeds from any unauthorized sales of the automobiles, Defendants hold such items and property in constructive trust for the rightful owner of the automobiles and any such proceeds; namely, Pope.

83.     Defendants' retention of the automobiles, or any alleged proceeds from any unauthorized sales of the automobiles, constitute ill-gotten gains obtained by the Defendants at the expense of Pope.

84.     Defendants' retention and/or realization of such ill-gotten gains is inequitable, unjust and unconscionable.

85.     To prevent Defendants from being unjustly enriched, a constructive trust should be imposed on the automobiles and any alleged proceeds from any unauthorized sales of the

12

automobiles in favor of Pope, and Defendants further should be ordered to account for their ill-gotten gains, and disgorge those ill-gotten gains, to Pope.

WHEREFORE, plaintiff Pope respectfully demands judgment in her favor and against defendants Chovanes and Ferketich on Count III in excess of $75,000.00, and all other relief that the Court deems just and proper under the circumstances including, but not limited to, an order for an accounting and disgorgement, along with pre-judgment interest and costs as allowed by law.

**Count IV—Declaratory Judgment**
**Pope v. Chovanes and Ferketich**

86.    Pope incorporates herein by this reference the averments in the foregoing paragraphs as if set forth at length herein.

87.    Pope is the sole owner of the 1969 Stingray and 1995 ZR-1.

88.    Pope did not provide to Chovanes any authority to act as her agent in any matter, including with respect to any transactions involving the alleged sale of these automobiles.

89.    Any such sales transaction including, but not limited to, the purported sale of the 1969 Stingray by Chovanes to Ferketich is, thus, *void ab initio*.

90.    To the extent this or any other purported sales transactions involving the automobiles have closed, title to the automobiles remains with Pope.

91.    An actual and justiciable controversy, ripe for determination, exists between Pope, on the one hand, and Defendants, on the other hand, with respect to their respective rights, status and other legal relations *vis-à-vis* each other and in connection with, among other things, the automobiles.

WHEREFORE, plaintiff Pope respectfully demands judgment in her favor and against defendants Chovanes and Ferketich on Count IV for a declaration that title, and all other

13

incidents of ownership with respect to the automobiles, is and remains vested solely in Pope, and that any transactions to the contrary are null and void, along with pre-judgment interest and costs as allowed by law.

### Count V—Preliminary and Permanent Injunctive Relief
### Pope v. Chovanes and Ferketich

92.     Pope incorporates herein by this reference the averments in the foregoing paragraphs as if set forth at length herein.

93.     Pope is the sole owner of the 1969 Stingray and 1995 ZR-1.

94.     The automobiles are unique and valuable property.

95.     One or both Defendants are in actual and/or constructive possession of the automobiles, and have failed and refused to return the automobiles to Pope.

96.     Defendants' conduct in this regard is tantamount to theft of Pope's automobiles.

97.     Pope is suffering, and has suffered, immediate and irreparable harm in connection with the Defendants' wrongful retention of the automobiles that cannot be cured with mere monetary damages -- particularly with respect to the 1969 Stingray that Pope purchased because of the sentimental value it has with the memory of her deceased brother.

98.     Pope has a high likelihood to succeed on the merits of her claims.

99.     Pennsylvania's public policy militates the protection of a plaintiff's personal property rights against the fraudulent, illegal and otherwise tortious conduct of a defendant.

100.    To the extent any public interest is implicated, it strongly favors allowing the owner of property to enjoy, without interference, all rights incident to that ownership.

101.    An injunction should be issued ordering Defendants to return the automobiles to Pope, in as good of a condition as they were in when first purchased by Pope and stored on Chovanes' property, along with all of the associated books and records that were provided to

14

Pope by the sellers of the automobiles at the Auto Auction.

WHEREFORE, plaintiff Pope respectfully demands judgment in her favor and against defendants Chovanes and Ferketich on Count V, for an injunction to issue directing Defendants to return the automobiles to her, and to pay monetary damages to the extent those automobiles have suffered damages and/or deteriorated in value while in Defendants' wrongful possession, along with pre-judgment interest and costs as allowed by law.


                                        KLEHR HARRISON
                                        HARVEY BRANZBURG LLP


Date:  June 26, 2015              By:   _____
                                        Michael A. Iaconelli
                                        William J. Clements
                                        1835 Market Street, 14th Floor
                                        Philadelphia, PA  19103
                                        (215) 569-2700

                                        *Counsel for Plaintiff,*
                                        *Amanda Pope*

15

# EXHIBIT A

Account:        3446221518            Capture Date:    06/29/2010
Bank Number:                          Check Number:    0

3735

Amanda Joyce Pope
2999 NW 165th St
Cave FL 32113-2952

6-26-2010

Pay to the
Order of: *Mecum Auctions Inc*                    $ 30,740.00

Thirty Thousand seven hundred forty dollars 00/100 — Dollars

Bank of America
U.S. Trust, Bank Of America
Private Wealth Management

ACH P/T 063000047

For 1955 2RL

Amanda L Pope

⑈063000047⑈ 00344622I5I8⑈3735

Electronic Endorsements
Date        Sequence            Bank #       Endrs Type      TRN   RRC    Bank Name
06/29/2010   004392867762       111012822    Pay Bank        N            BANK OF AMERICA, NA
06/29/2010   6319053557         71000301     Undetermined    N            FEDERAL RES BANK OF
06/28/2010   005992248333       111012822    Pay Bank        N            BANK OF AMERICA. NA
06/28/2010   000000101001249    71925758     Rtn Loc/BOFD    Y            PRAIRIE COMMUNITY BA
No Payee Endorsements Found

Account:    3446221518        Capture Date:    06/29/2010
Bank Number:                  Check Number:    0

PAY TO THE ORDER OF
PRAIRIE COMMUNITY BANK
07192827B3-1
FOR DEPOSIT ONLY
MEDINA AUCTION, INC.
OPERATING ACCOUNT
105240

Electronic Endorsements
| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|------|----------|--------|------------|-----|-----|-----------|
| 06/29/2010 | 004392867762 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |
| 06/29/2010 | 6319053557 | 710003D1 | Undetermined | N | | FEDERAL RES BANK OF |
| 06/28/2010 | 005992248333 | 111012822 | Pay Bank | N | | BANK OF AMERICA, NA |
| 06/28/2010 | 000000101001249 | 71925758 | Rtn Loc/BOFD | Y | | PRAIRIE COMMUNITY BA |

No Payee Endorsements Found

# EXHIBIT B

Amanda Joyce Pope
2999 NW 165th St
Citra FL 32113-2952

3736

63-4630 FL
3083

6/26/2015   Date

Pay to the
Order of   Mecum Auction                          $ 53,535.05

Fifty three thousand five hundred thirty five 05/100   Dollars

Bank of America

U.S. Trust, Bank Of America
Private Wealth Management

ACH R/T 063100277

For 1969 Corvette                    Amanda Pope

⑆063000047⑆ 003446221518⑈3736

# EXHIBIT C

# MECUM
## HIGH PERFORMANCE AUCTIONS

### *GATE PASS*

Car Number:   S49
Sale Date:   06/22/10
Owner:   AMANDA POPE (#41354)      FL
VIN:   1G1YZ22J0S5800421
Desc.:   1995 CHEVROLET CORVETTE ZR1 (RED)

AMOUNT DUE: $ 0.00      AS IS

*0042764*

*** THANK YOU ***

Sign Name: 

Print Name: AMANDA POPE     CLERK HER

# EXHIBIT D

MECUM COLLECTION
950 GREENLEE STREET, MARENGO, IL 60152

815-568-8888

### VEHICLE INFORMATION

| | | | |
|---|---|---|---|
| Lot #: | S49 | Sale: | BG10 |
| Inv. #: | 42764 | BOS #: | 20524 |
| Year: | 1995 | Make: | CHEVROLET | |
| Model: | CORVETTE Z | Body: | COUP | LITERATURE |
| VIN #: | 1G1YZ22J0S5800421 | Color: | RED | |

### SELLER INFORMATION

Name:    13906 – TODD MERCER / WILTONS CLASSIC CARS

Address:    1202 HIGHLAND AVE
                    JOLIET, IL 60435

License:    IL / DL2670

### ALL TRANSACTIONS ARE

## AS-IS

### NO WARRANTIES OF CONDITION

### IMPLIED OR OTHERWISE

### BUYER INFORMATION

Name:    41354 – AMANDA POPE   MICHAEL J. CHOVANES
Address:    2999 NW 165TH ST   10105 Huffs Church Rd.
                    CITRA FL 32113   Alburtis, PA 18011

Phone:    352-591-5613    Alt. Phone:    610-845-3911    Fax:    484-229-0480
                                                                                                Tax #:
License:

### SETTLEMENT INFORMATION

| | | Method of Payment | |
|---|---|---|---|
| Hammer Price: | 29000.00 | Check: | 30740.00 /3735/003446221518 |
| Premium: | 1740.00 | Cash: | |
| Other: | 0.00 | Credit Card: | |
| Total: | 30740.00 | | |

Cashier's Signature:    H. Regan

Buyer's Signature:    Amanda Pope
                    Buyer agrees to All Rules and Terms of Sale as outlined on the reverse of His/Her buyer's registration card.

Signature Date:    06/26/10        Time of Sale:    13:51        Printed By:    heidi

### TITLE OUT
Buyer's Signature:
Buyer's License:

# EXHIBIT E

Mail Lien Satisfaction to: Dept of Highway Safety and Motor Vehicles, Neil Kirkman Building, Tallahassee, FL 32399-0500

T# 847107830
B# 2649685

| Identification Number | Year | Make | Body | WT-L-BHP | Vessel Regis. No. | Title Number |
|---|---|---|---|---|---|---|
| 19437987708147 | 1969 | CREV | 2D | 3140 | | 118278911 |

Date of Issue          03/25/2015

Registered Owner:
AMANDA JOYCE POPE
2999 NW 165 ST
CITRA, FL 32113

Mail To:
AMANDA JOYCE POPE
2999 NW 165 ST
CITRA, FL 32113

Lien Release
Interest in the described vehicle is hereby released
By_____
Title_____
Date_____

IMPORTANT INFORMATION

1. When ownership of the vehicle described herein is transferred, the seller MUST complete in full the Transfer of Title by Seller section at the bottom of the certificate of title.
2. Upon sale of this vehicle, the seller must complete the notice of sale on the reverse side of this form.
3. Remove your license plate from the vehicle.
4. See the web address below for more information and the appropriate forms required for the purchaser to title and register the vehicle, mobile home or vessel: http://www.hsmv.state.fl.us/html/titlinf.html

# CERTIFICATE OF TITLE

| Identification Number | Year | Make | Body | WT-L-BHP | Vessel Regis. No. | Title Number |
|---|---|---|---|---|---|---|
| 19437987708147 | 1969 | CREV | 2D | 3140 | | 118278911 |

Lien Release
Interest in the described vehicle is hereby released

Primary Brand          Secondary Brand          No of Brands          Use          Prev. Issue Date
                                                              PRIVATE

State          Color
OR          YEL

By_____

Title_____

Counter Status or Vessel Manufacturer or Off Use
EXEMPT

Hull Material          Prop          Date of Issue          03/25/2015          Date_____

Registered Owner
AMANDA JOYCE POPE
2999 NW 165 ST
CITRA, FL 32113

1st Lienholder
NONE

DIVISION OF MOTORIST SERVICES          TALLAHASSEE          FLORIDA          DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES

Clayton Boyd Walden
Director

Control Number  117091057

14 /1    117091057

Terry L. Rhodes
Executive Director

TRANSFER OF TITLE BY SELLER (This section must be completed at the time of sale.)
Federal and/or state law require that the seller state the mileage, purchaser's name, selling price and date sold in connection with the transfer of ownership.
Failure to complete or providing a false statement may result in fines and/or imprisonment.
This side is warranted to be free from any liens except as noted on the face of the certificate and the motor vehicle or vessel described is hereby transferred to:

Seller Must Enter Purchaser's Name:_____          Address:_____

Seller Must Enter Selling Price:_____          Seller Must Enter Date Sold_____
I/We state that this ☐ 5 or ☐ 6 digit odometer now reads|__|__|__|__|__|__|.XX (no units) miles, date read_____ and I hereby certify that to the best of my knowledge the odometer reading:
☐ 1. reflects ACTUAL MILEAGE.          ☐ 2. is IN EXCESS OF ITS MECHANICAL LIMITS.          ☐ 3. is NOT THE ACTUAL MILEAGE.

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

SELLER Must          CO-SELLER Must
Sign Here_____          Sign Here_____
Print Here_____          Print Here_____
Seller/Dealer's License Number_____          License Number_____          Tax Collector_____
                    Auction Name_____

PURCHASER Must          CO-PURCHASER Must
Sign Here_____          Sign Here_____
                    Print Here_____

FEE_____          NOTICE: PENALTY IS REQUIRED BY LAW IF NOT SUBMITTED FOR TRANSFER WITHIN 30 DAYS AFTER DATE OF PURCHASE

HSMV 82250 REV 01/10          STATE OF FLORIDA

# EXHIBIT F

Agreement and Contract For A Sale of An Automobile

This is an agreement between _KLF AUTO_ _KEITH FERREICH_ (buyer), and

_MICHAEL CHOANES_ (agentforseller) representing

_AMANDA POPE_ (seller), where the agent has full authority to act for the seller.

Seller hereby certifies that the auto is free of any liens or encumbrances, and that a clear title

exists and will be transferred upon completion of this contract.

Buyer hereby agrees to purchase the following

_CORVETTE_ (auto), _1969_ (year) _R4 3795 705147_ (VIN), in

"AS IS" condition, except as noted below, for the amount of $30,000.00, a non-refundable

deposit of _$ 9,000 ⅋_ payable upon the signing of this agreement, with the

balance _$21,000 ⅋_ due on _OCT 30, 2014_.


Exceptions :

Seller agrees to repair fuel line and carburetor leaks.

Buyer agrees to the "as is" condition of the car especially with respect to the hood, wiring, tires,

and paint condition.


Date _OCTOBER 14, 2014_ (of this agreement)


Seller's agent _Michael Choanes_


Buyer _Keith Ferreich_


10-14-14  Rec'vd $9000 cash MFC
10-29-14  Rec'vd $21,000 cash MFC